# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: ASBESTOS LITIGATION | ) | |
| | ) | |
| LISA ESTRADA, individually and as | ) | |
| Fiduciary for the Estate of DONALD | ) | |
| JORDONEK, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: N19C-01-100 ASB |
| | ) | |
| AMERICAN HONDA MOTOR CO., | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: April 5, 2023
Decided: April 11, 2023

## OPINION ON DEFENDANT HENNESSY INDUSTRIES, LLC'S
## MOTION FOR REARGUMENT
## DENIED

*Michael C. Dalton, Esquire,* Dalton & Associates, P.A., Wilmington, Delaware, and *Michael Collins Smith, Esquire,* Balick & Balick, LLC, Wilmington, Delaware, *Attorneys for Plaintiff.*

*Brian D. Tome, Esquire*, Reilly, McDevitt & Henrich, P.C., Wilmington, Delaware, *Attorneys for Defendant*

**Jones, J.**

This asbestos case is controlled by Ohio substantive law. It is alleged that Donald Jordonek was exposed to asbestos from a number of sources as a result of his work over a career as an automotive mechanic. It is further alleged that as a result of his asbestos exposure, Jordonek contracted and died from mesothelioma.

One of the defendants sued is Hennessy Industries, LLC ("Hennessy") in its capacity as the predecessor-in-interest to AMMCO Tools, Inc. ("AMMCO"). AMMCO manufactured brake lathes and grinders, among other products. There is record evidence that Jordonek worked with this AMMCO equipment while employed at the Goodyear Tire Service Center in Maple Heights, Ohio from 1972 to 1999.

The AMMCO equipment that Jordonek worked with did not contain asbestos. The theory of liability against AMMCO is that it designed and sold a machine whose function was to grind asbestos containing brake linings, and that the machine released asbestos dust when applied to the linings.

Hennessey moved for summary judgment maintaining, among other things, that under Ohio law there is no duty to warn on the part of Hennessey. In a March 28, 2023 oral ruling, this Court denied Hennessy's motion, finding that Ohio law would impose a duty on the part of Hennessy to warn. This Motion for Reargument follows.

Because the original order of this Court was verbal, I will now take this opportunity to explain, in writing, the March 28, 2023 oral decision.

Hennessey maintains that under Ohio law it cannot be held liable for any asbestos containing component parts or other non-component parts that it did not

2

manufacturer or supply including brakes. The Delaware Supreme Court had recent occasion to give a history of the evolution of Ohio asbestos law in *Richards v Copes-Vulcan, Inc.*[11] In *Richards*, the Supreme Court wrote:

> Our starting point to answer the Ohio law question is the Fourth Circuit's decision in *Lohrmann v. Pittsburgh Corning Corp.* In *Lohrmann*, the plaintiff argued that a directed verdict in favor of three asbestos product manufacturers was improper when the trial court found there was insufficient evidence that the plaintiff came in contact with their asbestos products. Rather than adopt a rule "that if the plaintiff can present any evidence that a company's asbestos-containing product was at the workplace while the plaintiff was at the workplace, a jury question has been established as to whether that product contributed as a proximate cause to the plaintiff's disease," the Fourth Circuit created the now often-cited "manner-frequency-proximity" test for causation in asbestos cases:
>
> To support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked. Such a rule is in keeping with the opinion of the plaintiff's medical expert who testified that even thirty days exposure, more or less, was insignificant as a causal factor in producing the plaintiff's disease.
>
> As the court held, the manner-frequency-proximity test was useful to assess "the sufficiency of evidence for exposure" because it operated as "a *de minimis* rule since a plaintiff must prove more than a casual or minimum contact with the product." The appeals court affirmed the district court's directed verdict in favor of the three manufacturers because of the lack of evidence of exposure to their products.
>
> The Ohio Supreme Court, like many courts, had to decide what causation standard to adopt in the evolving area of toxic tort litigation. The causation issue presents unique challenges because of multiple defendants, multiple sources of exposure, and the long latency period of asbestos exposure diseases. In *Horton v. Harwick Chem. Corp.*, the Ohio Supreme Court

---

[11] 213 A.3d 1196 (Del. 2019).

declined to adopt the *Lohrmann* manner-frequency-proximity test because it "cast[ ] judges in an inappropriate role" of making scientific and medical exposure assessments, was "overly burdensome" for plaintiffs, and was "unnecessary." Instead, the Court adopted the "substantial factor" test of the Restatement. The plaintiff must show that they were exposed to asbestos from each defendant's product, and the asbestos from each defendant's product was a "substantial factor" in causing the injury.

After the *Horton* decision, the Ohio General Assembly in 2004 saw things differently and enacted Ohio Rev. Code Ann. §2307.96, which essentially adopted the *Lohrmann* causation standard in asbestos cases:

(A) If a plaintiff in a tort action alleges any injury or loss to person resulting from exposure to asbestos as a result of the tortious act of one or more defendants, in order to maintain a cause of action against any of those defendants based on that injury or loss, the plaintiff must prove that the conduct of that particular defendant was a substantial factor in causing the injury or loss on which the cause of action is based.

(B) A plaintiff in a tort action who alleges any injury or loss to person resulting from exposure to asbestos has the burden of proving that the plaintiff was exposed to asbestos that was manufactured, supplied, installed, or used by the defendant in the action and that the plaintiff's exposure to the defendant's asbestos was a substantial factor in causing the plaintiff's injury or loss. In determining whether exposure to a particular defendant's asbestos was a substantial factor in causing the plaintiff's injury or loss, the trier of fact in the action shall consider, without limitation, all of the following:

(1) The manner in which the plaintiff was exposed to the defendant's asbestos.

(2) The proximity of the defendant's asbestos to the plaintiff when the exposure to the defendant's asbestos occurred.

(3) The frequency and length of the plaintiff's exposure to the defendant's asbestos.

(4) Any factors that mitigated or enhanced the plaintiff's exposure to asbestos.[2]

---

[2] *Id.* at 1197-2000.

Here, Hennessy points to § 2307.96 and maintains it had no duty to warn the plaintiff. Hennessy reads this statute as defining a cause of action, and since Hennessy did not manufacture, supply, or install the product, and the product was not used by the defendant in the action, no cause of action against Hennessy lies. In short, Hennessy argues the plain words of the statute require the entry of summary judgment because it owes no duty under the statute.

Plaintiff responds that the language in the statute "used by" the defendant applies to the instant case. Plaintiff also points the Court to § 2307.91(C), which defines asbestos claims as "any claim means any claim for damages, losses, indemnification, contribution or other relief arising out, based on, or in any way related to asbestos."[3] According to the plaintiff, this definition would include the claims against Hennessy, and to adopt a contrary meaning would make the words of this definition meaningless.

The first question to be addressed is whether the plain words of the statute resolve the issue. I find that the clear terms of the statute do not address the question posed. Section 2307.98(b) is entitled "Burden of Proof in a Tort Action/ Factors Considered." The section does not define the nature and scope of the duties owed by a manufacturer. But what the statute does say, as evidenced by its words and the history of the statute, is that the plaintiff must show the exposure to a particular product was a substantial factor in bringing about plaintiff's asbestos-related disease. As explained in *Richards*, the underlying purpose of this section was to

---

[3] Ohio Rev. Code Ann. § 2307.91(C).

address the *Lohrmann*[4] issue of the required burden of proof in Ohio on the issue of causation. Plaintiff is also correct that the definition of "claims" is much broader than that outlined in § 2307.96, and encompasses the claims against Hennessey. To adopt the reading of the defendant would be inconsistent with the definition of claims as defined by the Act. In short, the statutory words do not resolve the issue.

Finding that the Ohio statute does not directly address the issue, I must look for other indications of what an Ohio court would decide. The parties have not provided any Ohio case directly addressing the issue before this Court; in fact, the parties have agreed that there is *no* Ohio decision addressing the issue. In the absence of such authority, I must predict Ohio law.[5]

Like a number of other jurisdictions, Ohio follows the general rule that a manufacturer does not have a duty to warn of adjacent parts supplied by a third party, the so-called bare metal defense.[6] But there are well recognized exceptions to this rule.[7] The question is whether Ohio would adopt an exception to the rule under the circumstances of this case.

In *In re: Fitzgerald*, our Superior Court had an opportunity to summarize Ohio law in this area. The *Fitzgerald* Court concluded that "a plaintiff creates a triable issue as to liability on a design defect theory where he can show that the defendant explicitly specified or at least recommended that a particular product to which the plaintiff attributes his exposure be utilized with asbestos, such that it is evident that

---

[4] *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986)
[5] *See generally Richards*, 213 A.3d.
[6] *Jacobs v. E.I. du Pont de Nemours & Co.*, 67 F.3d 1219, 1236 (6th Cir. 1995).
[7] *See id.*

6

the defendant's product was manufactured with the explicit purpose and intent of use with asbestos."[8] The *Fitzgerald* Court then cited to the Ohio case of *Fischer v. Armstrong Int'l, Inc.*,[9] where the Ohio Court of Common Pleas recognized a duty exists for a replacement part by a third party when the defendant in question "explicitly specified the product for use with asbestos". *Fischer*, in turn, quoted the Ohio decision in *Perry v. Allis Chalmers Products Liability Trust*,[10] in which the Ohio Court of Common Pleas once again recognized a duty on the part of a third party. And, in a recent Rhode Island decision interpreting Ohio law,[11] Judge Gibney of the Rhode Island Superior Court wrote:

> . . . Ohio Courts have addressed the issue of liability for after-applied, third party asbestos-containing products. Generally, such courts have "acknowledged that certain factual scenarios may arise under Ohio law where liability may attach to manufacturers of products for injuries caused by a plaintiff's exposure to a different manufacturer's asbestos-containing products." For instance, in *Perry v. Allis-Chalmers Corp. Prods. Liab. Trust*, the court denied summary judgment because the defendant specified replacement parts must contain asbestos. Nevertheless, the courts have held that a plaintiff must produce some evidence indicating that the original manufacturer recommended or required the use of asbestos insulation upon its products. Put another way, the fact that the defendant manufacturer may have foreseen that asbestos products could later have been used in conjunction with the original product, standing alone, is not sufficient to impose liability.[12]

I recognize that, in some of these cases, summary judgment was granted. But the grant of summary judgment was because the facts did not meet the exception. The

---

[8] *In re Fitzgerald*, N10C-06-179, at 9 (Del. Super. Aug. 16, 2011) (Ableman, J.).
[9] No. CV 07-615514 (Ohio Ct. Com. Pl. Jan. 2, 2008) (Sweeney, J.) (ORDER).
[10] No. CV 06-608652 (Ohio Ct. Com. Pl. Nov. 30, 2006) (Sheehan, J.).
[11] *Baumgartner v. American Standard, Inc.*, 2015 WL 4523476 (R.I. Super. July 22, 2015).
[12] *Id.* at *6 (internal citations omitted).

upshot of these cases is that Ohio law recognizes there are exceptions to its general rule. The question then becomes whether Ohio law *should* recognize an exception in this circumstance. I believe that it should, and the rationale for why it should can be gleamed from the California law cited by the plaintiff.

California follows the general rule of no duty to warn, but recognizes exceptions to that doctrine.[13] In *Sherman v. Hennessy*,[14] the California Court of Appeals for the Second Circuit had an opportunity to directly address the exact issue present in this case. The question in *Sherman* was whether California law recognized an exception to the general no duty rule where the AMMCO machine was the product in question. In *Sherman,* the Court had an opportunity to lay out the exceptions to the general rule and the public policy arguments behind it:

> In *O'Neil,* our Supreme Court examined the extent to which a manufacturer may be liable for injuries arising from "adjacent" products, that is, products made and sold by others, but used in conjunction with the manufacturer's own product. There, the family of a deceased United States Navy seaman asserted claims for negligence and strict liability against manufacturers of pumps and valves used on warships, alleging that the serviceman's exposure to asbestos dust from asbestos-containing materials used in connection with the pumps and valves caused his fatal mesothelioma. The court rejected the claims, concluding that "a product manufacturer may not be held liable in strict liability or negligence for harm caused by another manufacturer's product unless the defendant's own product contributed substantially to the harm, or the defendant participated substantially in creating a harmful combined use of the products."
>
> The *O'Neil* court distinguished three decisions in which liability had been imposed on a manufacturer, one of which is pertinent here, namely, *Tellez–Cordova v. Campbell–*

---

[13] *O'Neil v. Crane Co.*, 266 P.3d 987, 998 (Cal. 2012).
[14] 237 Cal. App. 4th 1133 (2015), *as modified on denial of reh'g* (July 8, 2015).

*Hausfeld/Scott Fetzger* There, the plaintiff asserted strict liability claims based on defective warnings and design defects against manufacturers of grinding, sanding, and cutting tools the plaintiff had used. The plaintiff's complaint alleged that the defendants' tools released toxic dust from other manufacturers' products, and that the dust caused his injuries. The defendants successfully demurred to the complaint on the basis of the component parts doctrine. In reversing, the appellate court concluded that the component parts doctrine was inapplicable: "The facts before us are not that respondents manufactured component parts to be used in a variety of finished products, outside their control, but instead that respondents manufactured tools which were specifically designed to be used with the abrasive wheels or discs they were used with, for the intended purpose of grinding and sanding metals, that the tools necessarily operated with those wheels or discs, that the wheels and discs were harmless without the power supplied by the tools, and that when the tools were used for the purpose intended by respondents, harmful respirable metallic dust was released into the air."

The *O'Neil* court concluded that *Tellez–Cordova* marked an exception to the general rule barring imposition of strict liability on a manufacturer for harm caused by another manufacturer's product. That exception is applicable when "the defendant's own product contributed substantially to the harm... ." In expounding the exception, the court rejected the notion that imposition of strict liability on manufacturers is appropriate when it is merely foreseeable that their products will be used in conjunction with products made or sold by others. The *O'Neil* court further explained: "Recognizing a duty to warn was appropriate in *Tellez–Cordova* because there the defendant's product was intended to be used with another product *for the very activity that created a hazardous situation.* Where the intended use of a product inevitably creates a hazardous situation, it is reasonable to expect the manufacturer to give warnings. Conversely, where the hazard arises entirely from another product, and the defendant's product does not create or contribute to that hazard, liability is not appropriate. We have not required manufacturers to warn about all foreseeable harms that might occur in the vicinity of their products."

The *O'Neil* court further concluded that the facts in *Tellez–Cordova* differed from the situation before it in two key

respects. As the "sole purpose" of the power tools in *Tellez–Cordova* was to grind metals, they could only be used in a potentially injury-producing manner, unlike the defendant manufacturers' pumps and valves, whose "normal operation ... did not inevitably cause the release of asbestos dust." Moreover, unlike the pumps and valves, "it was the action of the power tools ... that caused the release of harmful dust, even though the dust itself emanated from another substance." In view of those differences, the pumps and valves did not satisfy two requirements identified by the underlying appellate court for the imposition of strict liability under *Tellez–Cordova,* namely, that the manufacturer's product " 'is necessarily used in conjunction with another product,' " and that " 'the danger results from the use of the two products together.' " The *O'Neil* court determined that "[the] pumps and valves were not 'necessarily' used with asbestos components, and danger did not result from the use of [the] products 'together.' "[15]

The public policy rationale for imposing a duty on Hennessy, as articulated in *O'Neil*, is persuasive, as it places the burden on the party who increased the risk and profited from it. I believe that an Ohio court would be persuaded by the *O'Neil* analysis, as well. If an Ohio court is prepared to impose liability on a manufacturer where its products require the incorporation of another manufacturer's product, it surely would impose liability when a combination of the two products increases the risk of injury. To be clear, the reason for imposing liability is not based on the concept of foreseeability; as *Sherman* makes clear, that is not enough. The reason for imposing liability is because defendant's product was intended to be used with another product for the *very activity* that created a hazardous situation. Where the intended use of a product inevitably creates a hazardous situation, it is reasonable to expect the manufacturer to give warnings, so long as there is proof that the

---

[15] *Id.* at 1140-43 (emphasis in original) (internal citations omitted).

intended use of the product inevitably created a hazardous situation. Conversely, where the hazard arises entirely from another product and the defendants' product does *not* create or contribute to that hazard, liability is inappropriate. The factual requirements that must be established to trigger the *Tellez-Cordova* exception are: (1) the manufacturer's product is necessarily used in conjunction with another product; and (2) the danger results from the two products together. It is my prediction that Ohio would adopt this exception.

Against this background, I now turn to Hennessy's Motion for Reargument. This Court's standard for considering Motions for Reargument is well settled. The Court will only grant reargument when it has overlooked controlling precedent or legal principles, or misapprehend the law or facts in a way that would have changed the outcome of the underlying decision.[16] Reargument is not an opportunity for a party to revisit arguments already decided by the Court.[17]

Hennessy, in its Motion for Reargument, presents no new arguments. While Hennessy has cited to one additional case from Arkansas,[18] this case does not change the Court's conclusion. In short, I am satisfied that I did not overlook a controlling precedent or legal principle or misapprehend the law or facts in a manner affecting the outcome of the decision. The original March 29, 2023 verbal decision was correct and should not be changed or amended.

---

[16] *See Peters ex rel. Peters v. Texas Instruments, Inc.*, 2012 WL 1622396, at *1 (Del. Super. May 7, 2012), *aff'd*, 58 A.3d 414 (Del. 2013), as revised (Jan. 9, 2013).

[17] *See id.*

[18] *Thomas v. Borg-Wagner Mores TEC, LLC*, 340 F.Supp 3.d 800 (E.D. Ark. 2018). *Thomas* is an Arkansas case that cites Arkansas law.

For the above reasons, Defendant's Motion for Reargument is **DENIED**.

**IT IS SO ORDERED**.

/s/ *Francis J. Jones, Jr.*
Francis J. Jones, Jr., Judge

Filed via File & ServeXpress